**In re Robert E. THURMOND and Marile J. Thurmond, both dba Best Western Country Squire Inn; both fdba Best Western Country Kitchen Motel; House on the Hill, Debtors-In-Possession.**

**Bankruptcy No. 683–07538.**

United States Bankruptcy Court, D. Oregon.

Aug. 1, 1983.

Keith Boyd, McGavic and Boyd, Eugene, Oregon, for debtor.

Albert E. Radcliffe, Eugene, Oregon, for creditor.

---

## MEMORANDUM OPINION

POLLY S. WILHARDT, Bankruptcy Judge.

On June 16, 1983, the debtors-in-possession filed a Notice of Intent to purchase real property and to incur a secured debt out of the ordinary course of business. By such notice, the debtors-in-possession sought authority of the Court to purchase a residence, which purchase would require the debtors-in-possession to assume a new mortgage loan with General Electric Mortgage Corporation in the sum of $98,800.00 and possibly to make certain expenditures on the down payment of the residence out of the current operating funds of the Best Western Country Squire Inn. Certain creditors of the debtors-in-possession requested a hearing on the notice, which hearing was held on July 21, 1983.

At the hearing, the debtor-in-possession, ROBERT E. THURMOND, testified that he had sold a previous residence in July, 1981, had proceeded with plans to build a new home on the McKenzie River, which plans later were abandoned, and had received advice from his accountant that to avoid tax on the gain which he realized on the sale of his previous residence that he would have to invest in a new residence by the end of July, 1983. He further testified that he and his spouse are currently renting a residence for $585.00 a month and are not obligated to pay insurance or taxes on that house. He testified that in his opinion the proposed residence has a fair market value of $120,000.00. He testified that his out of pocket expense per month for mortgages, taxes and insurance for the new residence would be $1,172.00. He further testified that the proceeds which he had received from the sale of his previous residence had been placed in his business and that the down payment for the purchase of the new home would come from business

funds. He further testified that his business had suffered a net operating loss in 1981 and he anticipated losses in 1983.

Attorneys and representatives of creditors appeared at the hearing and made statements in opposition of the request for authority to purchase the residence.

■ Pursuant to Bankruptcy Code § 1107 the debtor-in-possession has all of the rights, powers, obligations and duties of a trustee serving in a case under that chapter. It is clear from the outline of the trustee's duties under Bankruptcy Code § 704 that the trustee is a fiduciary vis a vis his estate responsibilities. The debtor-in-possession too has a fiduciary obligation to refrain from acting in a manner which could damage the estate or, in a Chapter 11 proceeding, hinder a successful reorganization of the business.

■ It is clear from the papers on file in this proceeding that although the debtors-in-possession own several pieces of valuable real property, that at the time they filed their petition in this Court, their primary economic problem was that their property was not producing sufficient cash flow to meet their obligations. At this time the only income producing property of the estate available to support a successful reorganization is the Best Western Country Squire Inn. That business is also the Thurmonds' sole source of funds for living expenses. Mr. Thurmond testified that in purchasing a new residence he would be incurring an additional approximately $500.00 per month expense for housing over his present housing expense, which funds would necessarily have to come out of the revenues generated by the Best Western Country Squire Inn.

In addition, quite possibly any funds taken from the debtors-in-possession's business to purchase this residence would be placed out of reach of the unsecured creditors.

Finally, this Court understands that the debtors-in-possession potentially could be forced to recognize certain capital gains tax on the sale of their previous residence in the event that they do not reinvest the proceeds within two years of the previous sale. However, in this case, it appears doubtful, based upon the debtor-in-possession's testimony, that the debtors-in-possession would be obliged to pay any tax as a result of the realization of that capital gain, as he testified that he had business losses in the year 1981 and anticipated business losses for the year 1983. Net operating loss carry-backs from 1983 and possibly from 1982 should go a long way in eliminating tax on any capital gain realized from the sale of the residence.

Even if the debtors-in-possession were to incur capital gain tax as a result of their inability to roll over the proceeds from the sale of their previous residence in a timely manner, the debtors-in-possession must, as fiduciaries, put aside their private concerns, and take only those steps which as debtors-in-possession of the estate property, they are obliged to take for the greater good of the estate. From the facts before me I can see no positive economic impact on the reorganization proceeding from allowing the debtors-in-possession to purchase this real property; I can see a very possible negative economic impact on the reorganization.

Therefore, an Order will be entered denying the debtors-in-possession authority to purchase the real property under consideration. Necessarily, this denial will include a denial of the debtors-in-possession's right to assume a new obligation of indebtedness and the denial of the right to use any current operating funds of the Best Western Country Squire Inn to purchase this property.

This Memorandum Opinion contains the Court's finding of fact and conclusions of law and pursuant to Bankruptcy Rule 752 they will not be separately stated.