**In the Matter of ROYAL BEDDING COMPANY, Debtor.**

**Bankruptcy No. 84–661.**

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 5, 1984.

---

Joseph J. Bernstein, Pittsburgh, Pa., for creditor's committee.

Marvin J. Apple, Pittsburgh, Pa., for debtor.

## MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

The matter presently before the Court is a Motion to Vacate Order Appointing Attorneys for the Creditors' Committee and for a Hearing Pursuant to Bankruptcy Rule 2019(b) to Determine Whether the Attorneys Appointed for the Creditors Committee Have Failed to Disclose All of Their Connections with the Debtor or Have Failed to Comply With Any Other Provisions of Rule 2019 and Other Applicable Law.

Therein, Attorney Marvin Apple, on behalf of the Debtor, seeks to disqualify Joseph J. Bernstein, his former partner in the law firm of Apple and Bernstein, from representing the Creditors' Committee in the bankruptcy proceeding at bar. In the motion, Apple alleges that prior to its dissolution, the law firm of Apple and Bernstein represented Royal Bedding Company, Debtor herein. Subsequent to the dissolution of the firm, Apple continued his representation of Debtor, both before and after the filing of the bankruptcy proceeding.

Apple alleges that the appointment of his former partner as counsel for the Creditors' Committee is a violation of the Disciplinary Rules and Ethical Considerations of the Code of Professional Responsibility.

The facts are as follows. Royal Bedding Company, located at 1025 Beaver Avenue, Pittsburgh, Pa. 15233 is engaged in the manufacture and distribution of mattresses and box springs. Alan Cantor, who succeeded his father as president of the corporation in 1980, is the largest single stockholder of Royal Bedding. Alan Cantor owns 23% of the company's stock. Michael Cantor, his brother, owns 21%. Both Alan and Michael are holders of unsecured claims, each in the amount of $156,050 as a result of a loan to the company by their now deceased father.

Although operation of Royal Bedding Co. was profitable throughout the year 1980, it sustained losses every year thereafter. In 1982, Alan Cantor sought the advice of business associate Elbert Jackson, President of Jackson Mattress Company of Fayetteville, North Carolina. Upon his recommendation, Cantor agreed to meet with Attorney Joseph Bernstein, partner in the law firm of Apple and Bernstein, Pittsburgh, Pennsylvania. Jackson arranged and attended the meeting which took place at the offices of Apple and Bernstein on September 1, 1982 at 8:30 a.m. At the meeting, preliminary information was provided to Bernstein by Jackson.

Cantor testified that although the company was in need of capital, he was reluctant to make any investment because of his minority shareholder status.

After a brief and preliminary discussion with Cantor on the morning of September 1, 1982, Bernstein advised Cantor to meet with his partner, Marvin J. Apple, who was well-versed in the area of minority shareholder problems. With Cantor's permission, Bernstein invited Apple to join the meeting. Shortly after Apple's arrival, Bernstein left the meeting. Cantor had no further contact with Bernstein after that time.

Apple's time sheets for September 1, 1982 indicate that he arrived at the meeting at 9:12 a.m. Office records and time sheets for September 2, 1982 prepared by Apple list client as "Alan Cantor"; adversary party as "Royal Bedding Company"; counsel as "Marvin Apple"; and services performed as "met with client to review corporate documents and strategy."

On behalf of Cantor, Apple by letter of September 7, 1982 solicited shareholders of Royal Bedding Company to purchase additional stock; sell their stock; or invest additional capital in the failing corporation. There was no response thereto.

On March 7, 1983 Apple met with counsel for Michael Cantor at counsel's New York office. At that time, the parties entered into an agreement whereby Michael Cantor granted to Alan Cantor the right to acquire Michael's stock in Royal Bedding Company for the price of $5. per share. Michael received the sum of $1,000 upon execution of the agreement. To date, Alan has not acquired his brother's stock.

On August 1, 1983, the law firm of Apple and Bernstein was dissolved. Thereafter, on March 27, 1984 an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against Royal Bedding Company. On April 11, 1984, the case was converted to a voluntary case under Chapter 11. On April 18, 1984 an order was entered approving Debtor-in-Possession's employment of the firm of Apple and Apple and Marvin Apple. On May 10, 1984 an Application to Appoint Joseph J. Bernstein as attorney for the Creditors' Committee was filed. Therein the following representations were made. Among the services to be rendered by Bernstein were assistance in the investigation of Debtor-in-Possession's operation, assets and liabilities; and participation in the formulation of a plan of reorganization. Numbered paragraph 5 of the application states as follows: "To the best of the Committee's knowledge, Joseph J. Bernstein and the law firm of Bernstein and Bernstein, P.C. represent no other entity in connection with the case, are disinterested parties, and represent or hold no interest adverse to the interest of the estate with respect to the matters on which they are to be employed."

On May 11, 1984, an order was entered approving the employment of Joseph J. Bernstein as counsel for the Creditors' Committee. Shortly thereafter, Apple filed a motion to vacate the same. Therein, the following was averred. Contrary to the requirements of Rules 2014 and 2019, of the Bankruptcy Rules, the application fails to disclose that the firm of Bernstein and Bernstein represented Alan Cantor and Royal Bedding Company from September 1982 through July, 1983 while the current members of Bernstein and Bernstein were members of the firm of Apple and Bernstein. The application also fails to disclose that information given to the firm of Apple and Bernstein in confidence during the

same period dealt with financial matters directly involved in the bankruptcy proceedings at bar. It is further alleged that the obligation of Apple and Bernstein, Bernstein and Bernstein, and Apple and Apple to preserve the confidences and secrets of Royal Bedding continue after termination pursuant to Ethical Consideration 4–6 and Disciplinary Rule 4–101 of the Code of Professional Responsibility; and employment of Bernstein and Bernstein as Attorneys for the Creditors' Committee represents a violation thereof.

In its Answer, Bernstein admits that the law firm of Apple and Bernstein did, through Marvin J. Apple represent Alan Cantor in a file which was opened on September 1, 1982 and designated as "Alan Cantor v. Royal Bedding Co." It is denied that the law firm of Apple and Bernstein ever represented the interests of Royal Bedding, and therefore never received any information, secrets, or confidences which would have given rise to a fiduciary relationship or lawyer-client relationship with Royal Bedding.

At the trial on this matter, Jackson, present member of the Creditors' Committee, testified as follows. At the organizational meeting of the Creditors' Committee, Bernstein advised the Committee that he was a former member of the law firm of Apple and Bernstein. Bernstein disclosed his firm's representation to the Committee, however, Jackson could not recall whether Bernstein identified the firm's client as Royal Bedding or Alan Cantor. Bernstein further disclosed that he has had no contact with Alan Cantor or Royal Bedding since the initial meeting of September 1, 1982. Jackson further testified that after Bernstein's disclosures, the Committee met in private for approximately 30 minutes, whereupon it decided to retain Bernstein as its counsel, subject to Court approval.

Having concluded its findings of fact, the Court now turns to the issues presented herein. The issue of disqualification of counsel on the basis of impropriety or the appearance thereof is a serious one and resolution of the matter at bar requires the utmost scrutiny. The Code of Professional Responsibility requires a lawyer to use independent professional judgment on behalf of a client. (Canon 5). A lawyer is further required to preserve a client's confidences and secrets. (Canon 4). "A client should not fear that the confidences conveyed to his attorney in one action will return to haunt him in a later one." *Richardson v. Hamilton International Corporation,* 469 F.2d 1382, 1384 (3d Cir.1972) *cert. den.* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973). Canon 9 further requires a lawyer to avoid even the appearance of impropriety.

■ In a motion to disqualify counsel from representing interests which are adverse to those of a former client, the "substantial relationship" standard has been widely used by the courts. Counsel may be disqualified if there is a "substantial relationship" between the subject matter of an attorney's prior representation and the issues presented in a present lawsuit. *Evans v. Artek Systems Corp.* 715 F.2d 788 (2d Cir.1983); *Analytica Inc. v. NPD Research Inc.* 708 F.2d 1263 (7th Cir.1983); *U.S. v. Kitchin* 592 F.2d 900 (5th Cir.1979) *cert. den.* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed. 56 (1979).

The Third Circuit is in accord. As stated in *Akerly v. Red Barn System Inc.* 551 F.2d 539 (3d Cir.1977), ... "This Court has adopted the position that an attorney should be disqualified if he may have acquired material that is substantially related to his disputed representation in the course of a prior employment." (p. 544, ff. 12).

■ However, disqualification on the basis of appearance of impropriety will be affirmed only where "the impropriety is clear and one that would be recognized by all reasonable persons." *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 658 F.2d 1355, 1361–2 (9th Cir.1981) *cert. den. California v. Standard Oil Co. of California,* 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982).

The case of *Matter of Olson* 21 B.R. 123 (Bkrtcy.D.Neb.1982) presents a factual situation very similar to that at bar. Therein, the president of two corporations met with a bankruptcy expert on two separate occasions with regard to the deteriorating financial condition of his businesses. The Court found that the meetings of 2 and 1 hour durations respectively, were exploratory in nature and no agreement was reached in connection with future representation. The corporations subsequently filed Chapter 11 petitions, and counsel declined to represent Debtors in the bankruptcy proceedings.

Some 15 months later, the president filed individual bankruptcy proceedings. Therein, he sought to disqualify counsel from representing the largest creditor therein on the basis that privileged information had been revealed to counsel at the prior meetings, and said information could be used to the debtor's detriment.

While the Court held that an attorney-client relationship existed even though the preliminary meetings did not result in employment, it further states as follows:

> Other courts have found that where an attorney has not become heavily involved in the facts of a particular matter but has entered briefly and on the periphery for a limited and specific purpose relating solely to legal questions, disqualification is not warranted...

> ... Moreover, the Court does not find that the appearance of impropriety here is so great as to warrant a disqualification for conflict of interest... The conduct under scrutiny must be evaluated in "the eyes of the beholder context" and the lawyer must be disqualified when an actual appearance of evil exists, though there be no actual proof of evil. But an attorney's conduct is not governed by standards which can be imported to the most cynical eyes of the public. There must be a reasonable possibility of a specifically identifiable impropriety. None has been shown in the case here. The charge that there is an appearance of impropriety with no identifiable impro-

priety to support it is too slender a reed upon which to rest a disqualification. p. 129.

 Further, disqualification of counsel is warranted only in the event of true adversity of representation. In the bankruptcy context, the debtor-in-possession or trustee, and counsel for the creditors' committee both hold fiduciary positions which require protection of the creditors' interests and the requisite adversity necessary for disqualification may not be present. *Matter of Whitney-Forbes Inc.* 31 B.R. 836 (Bkrtcy.N.D.Ill.1983). After careful scrutiny, the Court is satisfied that disqualification is unwarranted in the case at bar. Bernstein's involvement in Apple's representation of Alan Cantor was peripheral. Further, the likelihood that he was privy to the confidences of Apple's client is minimal. In the Court's opinion, the prejudice which will result from Bernstein's continued representation of the Creditors' Committee herein is virtually nonexistent.

Based upon the foregoing, the motion at bar is denied. An appropriate order will be entered.