In the Matter of PARKER GRANDE DEVELOPMENT, INC. Debtor.

Bankruptcy No. 85–1789–TH RA.

United States Bankruptcy Court,
S.D. Indiana,
Terre Haute Division.

Feb. 21, 1986.

Daniel L. Weber, Terre Haute, Ind., for Mechanical Suppliers, Inc.

Kelvin L. Roots, Terre Haute, Ind., for Powell-Stephenson Lumber Co., Inc.

John E. Keller, Terre Haute, Ind., for Allen and Steen.

B. Michael McCormick, Terre Haute, Ind., for Terre Haute Quality Fence Co., Inc.

Donald L. Decker, Terre Haute, Ind., for Wolahan Lumber Co. and Warren Bays, d/b/a Custom Lawn Service.

William McClain, Terre Haute, Ind., for Const. Engineering.

Richard J. Shagley, Terre Haute, Ind., for Don Sanders & Associates, Inc.

Edward B. Hopper, II, Indianapolis, Ind., for debtor and principal of debtor, David Hopkins.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

MICHAEL H. KEARNS, Bankruptcy Judge.

This cause comes on for hearing on the 17th day of January, 1986, on the Motion for Appointment of Trustee under Section 1104 filed by Mechanical Suppliers, Inc. on October 29, 1985. A hearing was held pursuant to notice of December 30, 1985 to all creditors and parties in interest. On the 14th day of January, 1986, Powell-Stephenson Lumber Co., Inc. filed its Motion for Appointment of Trustee. This subsequent Motion was filed after notice of the instant hearing was accomplished.

Counsel for Powell-Stephenson Lumber Co., Inc., in open court, moved to consolidate its Motion For Appointment Of Trustee with the Motion filed by Mechanical Suppliers, Inc., and requested its Motion be heard concurrently in the instant hearing. There being no objection to the oral motion to consolidated, and the Court finding that both Motions relate to the same subject matter, and request similar relief, the Court granted the motion to consolidate. Both Motions then came on for hearing.

Appearing at said hearing were: Daniel L. Weber, counsel for Mechanical Suppliers, Inc.; Kelvin L. Roots, counsel for Powell-Stephenson Lumber Co., Inc.; John E. Keller, counsel for Allen and Steen; B. Michael McCormick, counsel for Terre Haute Quality Fence Co., Inc.; Donald L. Decker, counsel for Wolahan Lumber Company and Warren Bays, d/b/a Custom Lawn Service; William McClain, counsel for Construction Engineering; Richard J. Shagley, counsel for Don Sanders & Associates, Inc.; Edward B. Hopper, II, counsel for the debtor and the principal of the debtor, David Hopkins.

Witnesses were sworn, evidence was heard, and all parties rested.

The Court, having observed the demeanor of the witnesses, having weighed their credibility, having further considered the evidence, and being duly advised in the premises, makes and enters the following Findings of Fact, Conclusions of Law and Order:

## FINDINGS OF FACT

1. Parker Grande Development, Inc. is an Indiana corporation, and was incorporated in 1979. Its officers at the time of incorporation were David Hopkins, President, and his mother, Margaret L. Hopkins, Secretary and Treasurer.

2. Margaret L. Hopkins resigned April 15, 1985. At the time of her resignation, she gave power of attorney to her son, David.

3. David Hopkins testified that his mother gave him her power of attorney to enable him to facilitate the transfer of title of parcels of real estate.

4. David Hopkins further testified that in June of 1983, Margaret L. Hopkins, who owned forty-nine (49) shares of the stock in debtor corporation at that time, transferred those shares to him. He testified that he already owned the remaining fifty-one (51) shares.

5. The debtor corporation's main business was that of acquiring, developing and marketing real estate in the Terre Haute,

Indiana area. Debtor corporation also constructed and marketed new houses and housing developments.

6. In October of 1979, the debtor corporation purchased approximately eight (8) acres of land which later came to be known as Parker Grande East, a subdivision developed by the debtor corporation. Two (2) houses were already in existence on this real estate at the time of purchase, and the debtor corporation built two (2) additional houses in this subdivision.

7. One of these houses was built in 1981 on "lot 1". This house was sold before it was built. Hopkins testified the debtor corporation "made money" on this project. Hopkins further testified that this was the only house the debtor corporation sold in 1981.

The other house was built in 1983 on "lot 4". This house was a geothermal house; Hopkins testified the debtor corporation took a loss on this project but nevertheless, Hopkins was of the opinion this project was a "success" as it "put the debtor corporation's name in the public's eye". This home on "lot 4" took seven (7) months to market before it was purchased. The house was eventually sold for approximately One Hundred Twenty-nine Thousand Dollars ($129,000.00). This was the only house constructed by the debtor corporation in 1983.

8. The debtor corporation thereafter bought approximately two and five tenths (2.5) acres of undeveloped land which later became known as Sand Garden Cove. There existed one (1) house on this property at the time of purchase. The debtor corporation developed at least four (4) of the five (5) lots in this subdivision. Sales of two (2) of these four (4) developed lots are pending.

9. The debtor corporation also purchased land which later became known as Sherwood Commons, Phases I, II and III, which consisted of a total of seven and five tenths (7.5) acres. This subdivision was divided into approximately thirty-four (34) units. Hopkins testified that the debtor corporation sold approximately five (5) un-improved lots within this subdivision and had received an offer from a prospective purchaser on a sixth (6th) lot.

10. Debtor corporation also built a house in an existing subdivision known as Woodgate South for one Joe Touchton, from which project it realized a profit of approximately Fifteen Thousand Dollars ($15,000.00).

11. Sometime in March, 1985, Sycamore Agency, Inc., insurer for debtor corporation, cancelled the debtor corporation's builder's risk insurance policy. This cancellation was due to the nonpayment of premiums. Hopkins testified that on or about April 1, 1985, he went to the Sycamore Agency, Inc. and tendered payment in full for the insurance premiums in an attempt to get the risk insurance reinstated. Hopkins testified that the Vice-President of Sycamore Agency, Inc., Douglas Grim, told Hopkins "we'll see what we can do". Hopkins testified that approximately ninety (90) days later, he discovered in fact that the debtor corporation's builder's risk insurance had not been reinstated.

12. Meanwhile, on or about August 12, 1985, two (2) houses in the Sherwood Commons Subdivision, Phase II, were vandalized and sustained substantial damage. One of these parcels was purchased by Mr. and Mrs. Kintz, which parcel was otherwise known as Lot F–1 in Sherwood Commons, Phase II, and the other parcel was purchased by Williams and Associates, which parcel was known as parcel E–1 in Sherwood Commons, Phase II.

At a time subsequent to said vandalism, Williams & Associates inquired of debtor's principal as to whether debtor corporation owned builder's risk insurance to cover the damage. David Hopkins, upon examination in open court, admitted that he misrepresented to Williams and Associates that debtor corporation owned builder's risk insurance when in fact it did not. Mr. Hopkins further revealed that he told three (3) individuals, Mr. Kintz, a Mr. Williams, Jr., and a Grace and/or Jim Larkin, that he had builder's risk insurance after he had been

notified by debtor corporation's insurance company that debtor corporation's policy had been cancelled for nonpayment.

David Hopkins stated that although he had misrepresented the status of debtor corporation's insurance coverage, he believed debtor corporation would obtain insurance, and that this belief was an underlying factor in concluding that his misrepresentation would not be harmful and detrimental to the purchasers. Mr. Hopkins testified that he thought such misrepresentations would pacify these individuals until debtor corporation in fact obtained insurance.

13. David Hopkins further testified that two (2) youths had been determined to be the perpetrators of the vandalism. He also stated that efforts were currently underway to secure payment from the families of these youths for the losses incurred. To date, however, no definitive resolution has been reached.

14. Mr. Hopkins testified that Mr. Walton, a personal friend of his, and a creditor of debtor corporation, had previously purchased a parcel of land from debtor corporation. Said parcel was located in a Parker Grande Subdivision. He also testified that out of this transaction arose a debt from debtor corporation to Walton in the approximate sum of Seven Thousand Dollars ($7,000.00).

Hopkins openly admitted that debtor corporation owed these monies to Walton and that Mr. Hopkins intentionally left this debt off of debtor corporation's schedules filed with the Court. Mr. Hopkins further admitted that he intended to repay this debt by allowing Walton to purchase an additional parcel of real estate from debtor corporation and credit Seven Thousand Dollars ($7,000.00) toward the parcel's purchase price. On examination by creditors' counsel, Hopkins testified that this still is his intention.

15. Hopkins testified that he wishes to remain in possession and opposes the appointment of a Trustee. He testified that if he is allowed to remain in possession, members of his family who possess claims against debtor corporation of potentially Two Hundred Sixteen Thousand Dollars ($216,000.00), would not participate in any distribution to the class of unsecured creditors but rather would seek repayment from remaining monies after payment of the unsecured class.

16. Finally, no creditor has objected orally or by pleading to the appointment of a Trustee, nor has any creditor registered support for the debtor remaining in possession.

### CONCLUSIONS OF LAW

1. Under section 1104(a) of the Code, the Court may order the appointment of trustee

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

2. Chapter 11 is designed to allow the debtor in possession to retain management of the business operations unless a party in interest can prove that the appointment of a Trustee is warranted. *In re BAJ Corp.*, 42 B.R. 595 (Bkrtcy.D.Conn.1984); *In re General Oil Distributors, Inc.*, 42 B.R. 402 (Bkrtcy.E.D.NY 1984); *In re La Sherene, Inc.*, 3 B.R. 169 (Bkrtcy.N.D.Ga. 1980).

3. The appointment of a Trustee in a Chapter 11 case is an extraordinary remedy which should not be granted lightly, as it may impose a substantial financial burden on a hard-pressed debtor seeking relief under the Bankruptcy Code. *In re General Oil Distributors, Inc., supra; In re*

*Hotel Associates, Inc.,* 3 B.R. 343, (Bkrtcy, E.D.Pa.1980).

■ 4. Furthermore, the party seeking the appointment of a Trustee in a Chapter 11 case bears the burden of proving by clear and convincing evidence that such appointment is necessary. *In re General Oil Distributors, Inc., supra,*

■ 5. A debtor-in-possession has all the rights and duties of a Trustee in a Chapter 11 case. *In re Hawaii Dimensions,* 47 B.R. 425 (Dist.Ct.Hawaii, 1985); *Sabre Farms, Inc. v. Bergendahl,* 42 B.R. 649 (Dist.Ct.Or.1984). The duties of a debtor-in-possession, therefore, include the duty to protect and to conserve property in his possession for the benefit of creditors. *In re Devers,* 759 F.2d 751 (9th Cir.1985).

■ 6. Furthermore, a debtor-in-possession is a fiduciary of his creditors. *In re Van Brunt,* 46 B.R. 29 (Bkrtcy.W.D.Wisc. 1984); *See also, Matter of Royal Bedding Co.,* 42 B.R. 257 (Bkrtcy.W.D.Pa.1984). Because the debtor-in-possession stands in a fiduciary relationship with his creditors, his fiduciary obligation includes refraining from acting in a manner which could damage the estate, or hinder a successful reorganization of the business. *In re Thurmond,* 41 B.R. 464 (Bkrtcy.D.Or.1983).

■ 7. Under 11 U.S.C. § 1104(a)(1), a creditor must prove the existence of fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management. However, 11 U.S.C. § 1104(a)(2) provides a flexible standard for the appointment of a Trustee. *See, In re Deena Packaging Industries, Inc.,* 29 B.R. 705 (Bkrptcy.S.D.NY 1983); *In re Hotel Associates, Inc., Supra;* also, *see generally 5 Collier on Bankruptcy* 1104.01 (15th Ed.1979) at 1104–17. Under 11 U.S.C. § 1104(a)(2), the Court may utilize its broad equity powers to engage in a cost-benefit analysis in order to determine whether the appointment of a Trustee would be in the interests of creditors, equity security holders, and other interests of the estate. *In re Hotel Associates, Inc., supra.* Consequently, the analysis becomes one of whether the cost of appointing a Trustee is outweighed by the benefits derived by the appointment.

8. This Court's Order is predicated on the authority granted it pursuant to 11 U.S.C. § 1104(a)(2); that being to appoint a Trustee when it is in the interest of creditors. This Court in no way bases its decision on 11 U.S.C. § 1104(a)(1).

9. The Court concludes that almost without exception the above-mentioned principles have evolved in Chapter 11 cases which sought as their goal a reorganization of the debtor into a viable and profitable business venture or enterprise.

10. Although this Chapter 11 is one seeking liquidation, debtor's principal represented to the Court that he intends, as part of his Plan, to develop and market additional parcels of real estate.

In order to determine the benefits of appointing a Trustee, a close and careful scrutiny of a debtor-in-possession's prior and present conduct must be made and from that a determination must be made that a Trustee will accomplish the goals of the Chapter 11 Plan more efficiently and effectively. This examination makes critical an assessment of the overall management of the debtor corporation; the experience, skills and competence of the debtor-in-possession to manage; the performance of the debtor-in-possession both past and present, and the trust and confidence in the debtor-in-possession by members of the business community with whom debtor-in-possession has had business transactions and must, of necessity, continue to have the same. This analysis is especially necessary in a case such as this one where although the Chapter 11 Plan is one of liquidation, the liquidation is to occur through further development and marketing of real estate parcels. *See, In re L.S. Good & Co.,* 8 B.R. 312 (Bkrtcy.N.D.W.Va. 1980).

### APPOINTMENT OF A TRUSTEE

■ 1. Incorporating and adopting this Court's findings and conclusions as herein

set forth, this Court finds and concludes that Mr. Hopkins' current and past management of debtor corporation has been unsuccessful, and that the lack of success is in large part directly attributable to Mr. Hopkins' lack of skills, ability, training and experience in the area of land acquisition, development, and sale.

2. Mr. Hopkins has demonstrated little discipline or business acumen, in his management attempts and would have, in the opinion of this Court, failed much earlier in his enterprise, but for the intervention and infusion of monies by his relatives, those being his mother, his father, and his grandmother.

3. Although Mr. Hopkins took no salary or commissions for a number of years, the fact that he paid himself the sum of Fifty Thousand Dollars ($50,000.00) as salary during the calendar year 1985, demonstrates his inability to appreciate the true state of the fiscal affairs of the debtor corporation. It further demonstrates his disregard of debtor corporation's financial obligation to repay its lendors, trade suppliers, workmen, or other business obligations before paying himself such a substantial salary.

4. The acts of Mr. Hopkins, as principal of the debtor, most notably his misrepresentation and his admission of preferring or attempting to prefer one creditor over another demonstrate a lack of awareness of and adherence to the duties and requirements imposed in the fiduciary capacity that Mr. Hopkins occupies as debtor-in-possession.

5. Further, debtor's actions, past and present, demonstrate that attempts from this date forward in the sale and marketing of the remaining assets are unlikely to be successful. This is due in large part because there exists a lack of confidence and trust in Mr. Hopkins by members of the business community. This lack of confidence and trust may likely spread to members of the general public, including the potential purchasers with whom Mr. Hopkins will be attempting to market the remaining assets of the estate. Such lack of trust impairs Mr. Hopkins' ability to market the remaining parcels of real estate for the highest market value.

6. These facts, coupled with the fact that this request for the appointment of a Trustee is without objection by any creditor and that no creditor support is evidenced for debtor to remain in possession, demonstrate that there exists a lack of confidence in the current management and operation of this business. This lack of trust and confidence is a most important consideration in the determination of whether the appointment of a Trustee will benefit creditors by ensuring as successful a liquidation as can be accomplished.

The appointment of an independent Trustee with business skills and expertise found to be lacking in the past performance of Mr. Hopkins, will not only enhance the possibility, but is necessary to successfully conduct a marketing plan of liquidation. Such an individual has the immediate potential to restore debtor corporation's trustworthiness, credibility, and dependability in future business transactions.

7. A general restoration of debtor corporation's credibility can only be ensured with the greatest degree of success by the removal of the debtor-in-possession and the appointment of a Trustee. The cost of a Trustee is greatly outweighed by the benefits derived from such appointment in the instant case.

8. While this Court concludes in the instant case, that the debtor-in-possession should be removed, it does not accept the general proposition that people do not learn from their mistakes and alter their behavior, conduct, or business patterns. This Court is cognizant that this position is in contrast to reasoning set forth in cases which have resulted in the removal of the debtor-in-possession and the appointment of a Trustee, as well as the philosophy of great scholars and jurists.

Philosopher George Wilhelm Hegel stated that, "What history teaches us is that men have never learned anything from it"; renowned advocate Clarence Darrow sur-

mised that, "History repeats itself, that's one of the things wrong with history"; and former Chief Justice Earl Warren expressed that, "The only thing we learn from history is that we do not learn".

The decision in this case would seem to manifest adherence to this body of thought. However, the Court tenaciously grasps the hope and belief that mankind does more often than not learn from its past.

9. The Court concludes that the appointment of a Trustee in the within cause is in the interest of creditors pursuant to 11 U.S.C. § 1104(a)(2).

## ORDER

IT IS, THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that:

1. C. Don Nattkemper, an attorney admitted to the practice of law in the State of Indiana, whose office is located at 506 Ohio Street, Terre Haute, Indiana, is appointed Trustee herein. The Court finds that C. Don Nattkemper is a disinterested person, but to ensure the same, ORDERS and DIRECTS him to file an Affidavit of Disinterest.

2. A bond in the amount of Fifty Thousand Dollars ($50,000.00) be secured by the Trustee, Mr. Nattkemper, and post said bond as soon as is practicable, and in any event, within fifteen (15) days of the date of this Order.

3. David Hopkins, as principal of the debtor corporation, is, from the date of this Order, ORDERED and DIRECTED to cease and desist from all operations of debtor corporation, and that he, from the date of this Order, has no authority to act for and on behalf of debtor corporation.

4. Any and all assets be frozen, and that no sales be conducted or negotiated, and that all accounts of monies in financial institutions or otherwise, be, and are hereby frozen, and that only the Trustee, upon his qualification, be allowed to resume debtor corporation's operation and management, and to deal with any and all accounts and monies of debtor corporation in the ordinary course of business and to conduct such other acts as might be necessary, upon proper application and authority of this Court.

5. Said Trustee, upon qualification, is directed to commence immediate operation and management of debtor corporation's business and is granted full powers and duties of a Trustee pursuant to 11 U.S.C. § 1106(a).