53 N.J. Super. 35 (1958)
146 A.2d 471
FINIS GENTILE AND JOSEPH GENTILE, PLAINTIFFS-APPELLANTS,
v.
NATIONAL NEWARK & ESSEX BANKING COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1958.
Decided November 28, 1958.
*36 Before Judges SCHETTINO, HALL and GAULKIN.
*37 Mr. James N. Marinello argued the cause for plaintiffs-appellants (Messrs. Marinello, Cundari & Soriano, attorneys).
Mr. Robert L. Clifford argued the cause for defendant-respondent (Messrs. Mead, Gleeson, Hansen & Pantages, attorneys).
The opinion of the court was delivered by SCHETTINO, J.A.D.
Appeal is taken from a Superior Court, Law Division, judgment entered on a motion for involuntary dismissal. R.R. 4:42-2(b). Plaintiff-wife, hereinafter referred to as "plaintiff," seeks recovery for personal injuries as a result of a fall claimed to arise from defendant's alleged negligence in removing snow from the sidewalk in front of its business premises. Plaintiff-husband seeks recovery per quod.
On a motion for judgment at the close of plaintiffs' case we accept as true all evidence which supports plaintiffs' case and give to plaintiffs the benefit of all legitimate inferences which may be drawn therefrom. Honey v. Brown, 22 N.J. 433, 438 (1956). We summarize the evidence in the light most favorable to plaintiffs.
On March 19, 1956 shortly after 1:00 P.M. plaintiff was injured by reason of a fall which occurred in front of defendant's bank located at the northeasterly corner of Bloomfield Avenue and Broad Street in Bloomfield. It had snowed heavily for two days and was snowing lightly when plaintiff left her home for work that morning, but the snow had stopped falling around noon. Plaintiff alighted from a north-bound Bloomfield Avenue bus at the southerly corner of Washington Street and walked northerly on Bloomfield Avenue, crossed Washington Street and Broad Street on the regular crosswalks without any difficulty, and proceeded towards the defendant's bank to make a deposit.
To compel pedestrians to use the crosswalk, poles and chains were maintained on the sidewalk at the curb-line at the Broad Street corner in front of defendant's premises, with an opening which marked the entrance from the crosswalk *38 to the sidewalk. This was the only way one could approach defendant's bank from the direction plaintiff was walking. On the sidewalk in front of defendant's premises, extending completely across the opening and the curb, was a mound of snow about two feet high. The sidewalk extended approximately 20 feet from the bank entrance to the gutter. This sidewalk had been cleared for about seven feet from the building and the snow therefrom piled on the outer part of the walk. The snow mound blocking the crosswalk sloped downward from the general location of the curb to the seven foot area of the sidewalk which had been cleared. The snow on each side of the opening was considerably higher than the two feet mound within it.
When the plaintiff arrived at the crosswalk opening, "I got up onto the mound of snow and started down. I had taken maybe five or six steps, and my right foot went through the snow" up to the knee "to what apparently was ice. I felt my foot go through to the ice underneath the snow. There was a dislocation of the ankle, and I heard the bones smash, and I slid down." After the fall, plaintiff was lying on her back with her head towards the gutter and her feet towards defendant's building.
The only evidence as to defendant's connection with the snow removal and the mound in the opening was to be found in the following answers to plaintiff's interrogatories which plaintiff read into the record:
"9. State whether or not the defendant caused the snow and ice which accumulated on the public sidewalk adjacent to premises known as 2 Broad Street, Bloomfield, New Jersey, to be removed on March 19, 1956.
Answer: Agents of the defendant corporation shoveled the public sidewalk adjacent to the premises known as 2 Broad Street, Newark, [sic] New Jersey on March 19, 1956. Because of the quantity of snow that fell, snow was piled on the outer part of the walk away from the bank building, and paths were cut at the crosswalks.

* * * * * * * *
14. If the snow and ice which accumulated on premises known as 2 Broad Street, Bloomfield, New Jersey, was removed by the agents or employees of the defendant on March 19, 1956, state in detail the number of occasions said snow and ice was removed and *39 the exact time of which said snow and ice was removed on that date.
Answer: The time or times that agents and employees of the defendant removed snow on March 19, 1956 are presently unknown, because of the death of Rudolph Lipps, the maintenance superintendent, since that date. William Brydon remembers shoveling three or four times during the day, however, and Joseph Merrick remembers shoveling once.
15. State whether or not [defendant] by any supervisory employees or agents of the defendant directed the removal of the snow and ice from the public sidewalk adjacent to defendant's premises on March 19, 1956.
Answer: Yes."
At the close of plaintiffs' case defendant moved for judgment on the ground that there was no evidence it had placed the snow on the crosswalk and, even if it had, there was no evidence that in so doing it created a new element of danger or hazard. The trial judge said that the jury had the right to infer that defendant created the mound in the crosswalk. However, he granted defendant's motion on the ground that there was no evidence that the mound introduced an element of danger or hazard beyond that caused by natural forces. He seemed to think that, since the ice was already covered by the snow which had fallen, defendant's covering it to a greater depth with the snow that was shoveled added no new element of danger or hazard. In this we believe he erred.
The common law imposed no duty upon an abutting owner to keep the sidewalk in front of his premises free from snow or ice. Sewall v. Fox, 98 N.J.L. 819, 821 (E. & A. 1923). The property owner is only liable if, in clearing the sidewalk, he increases the natural hazard by introducing some new element of danger. Saco v. Hall, 1 N.J. 377, 381 (1949). The rule was reiterated by Judge Jayne in MacGregor v. Tinker Realty Co., 37 N.J. Super. 112, 115 (App. Div. 1955):
"In considering the situation presented to the trial judge in the present case, our attention centers upon the decision in Taggart v. Bouldin, 111 N.J.L. 464 (E. & A. 1933), in which it was held that an owner is under no duty to maintain the sidewalk abutting *40 his land free from the natural accumulation of snow and ice. Nor is he liable, in clearing the sidewalk of snow and ice, unless through his negligence a new element of danger or hazard, other than one caused by natural forces, is added to the use of the sidewalk by a pedestrian."
We are of the opinion that the jury could reasonably infer from the answers to the interrogatories that defendant's agents piled the sloping mound of snow at the crosswalk. The answers admit that defendant piled all of the snow from the cleared area of the sidewalk on the outer part of it, including the crosswalk opening, so there can be no doubt that defendant had added to the depth of the natural fall at this point. While the answer goes on to say that thereafter paths were cut at the crosswalks, the presence of a two-feet sloping mound remaining in this opening at the time of the fall could reasonably give rise to the inference either that defendant had not cut a path at all at this particular spot or that it had removed only a part of that which it had piled there on top of the natural fall.
We further are convinced that the jury could infer that it is much more difficult and hazardous for a pedestrian to mount a mound of snow than if it were level, and so that there was more chance of falling when one was forced to descend into the snow on a sloping descent. If we assume plaintiff's rather uncertain testimony can be said to amount to evidence that there was ice underneath the snow and that such ice was the immediate cause of her fall, it was still open to inference that the sloping mound was itself also an efficient cause. That is sufficient to establish liability of the party responsible for the latter even where a natural condition is a concurring cause. Menth v. Breeze Corporation, Inc., 4 N.J. 428, 442 (1950); Van Cora v. Trowbridge Outdoor Advertising Corp., 18 N.J. Super. 1, 4 (App. Div. 1952). The jury could, therefore, have found that when defendant's agents created the sloping mound of snow across the opening at the crosswalk, they created a new element of danger or hazard to plaintiff other than what was already present due to natural forces, and that *41 this new element was a proximate cause of the plaintiff's fall and subsequent injuries.
Plaintiffs' complaint also sounds in nuisance arising out of negligence as an alternative theory of action. On that score she urges that the mere obstruction of a crosswalk opening by a pile of snow negligently placed there by an abutting owner constitutes a public nuisance. In view of our special rule as to liability in so-called snow and ice cases which we have previously set forth, we think the nuisance concept is not appropriate. Plaintiff does not charge defendant with willful or intentional misconduct. What is charged is nothing more than conduct which under the circumstances may amount to negligent acts of commission. Such is the real basis of plaintiff's cause of action and the label she seeks to apply should have no significance. Hartman v. Brigantine, 23 N.J. 530, 536 (1957). Cf. Krug v. Wanner, 28 N.J. 174 (1958).
We hold that plaintiff established a prima facie case and the motion for judgment of involuntary dismissal should have been denied.
Reversed and remanded for new trial; costs on this appeal to abide the outcome of the new trial.