# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1259-22

M.R.,[1]

     Plaintiff-Appellant,

v.

SMOLAR GROUP, INC., and
MARCO LEON-CONDO,

     Defendants,

and

DARCELLA PATTERSON
SESSOMES and STATE OF
NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Defendants-Respondents.

_____

Submitted March 12, 2024 – Decided May 10, 2024

---

[1] Although the outcome of criminal charges brought against defendant Marco Leon-Condo is not indicated in the record before us, we use initials to refer to plaintiff to protect her privacy as an alleged victim of sexual assault and because records related to alleged victims of sexual offenses are excluded from public access. See R. 1:38-3(c)(12).

Before Judges Gooden Brown and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1891-19.

Peter M. Kober, attorney for appellant (Kober Law Firm, LLC, attorney; Peter M. Kober, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondents (Sookie Bae-Park, Assistant Attorney General, of counsel; Katherine Ellen Chrisman, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff M.R. appeals from the following Law Division orders: the order dated August 4, 2021, denying plaintiff's motion for leave to file a third amended complaint; the order dated January 21, 2022, dismissing plaintiff's third amended complaint as to defendant Darcella Patterson Sessomes; the order dated March 4, 2022, denying plaintiff's motion for reconsideration of the January 21, 2022 order; and the order dated November 14, 2022, granting summary judgment to defendant New Jersey State Department of Corrections (DOC) and dismissing plaintiff's complaint with prejudice.

Plaintiff, a former DOC inmate, was incarcerated at Edna Mahan Correctional Facility for Women. In March 2018, the DOC placed plaintiff in Columbus House, a Residential Community Reintegration Program (RCRP) in Trenton. Plaintiff began working at a local McDonald's under the work release

program at Columbus House.  Six months later, plaintiff reported to members of the Columbus House administration that over the course of the prior four months, her manager at McDonald's had been harassing and sexually assaulting her.

That same day, the director of Columbus House reported plaintiff's complaint to the police.  Detectives from the Lawrenceville Police Department interviewed plaintiff at Columbus House and then brought her to the station to provide a statement.  Columbus House suspended its work release program at that McDonald's location.

The director of Columbus House also notified the Assistant Superintendent of the DOC's Office of Community Programs, and that office notified defendant Sessomes, who was the DOC's Assistant Commissioner overseeing programs and community services.  Sessomes made the decision to administratively return[2] plaintiff to Edna Mahan that day based on the gravity

---

[2]  A nondisciplinary "administrative return" is the DOC's process for returning an inmate from an RCRP to a correctional facility.  N.J.A.C. 10A:20-4.42.  This provision was amended effective October 2023 to provide a more comprehensive list of reasons for return, including "[t]he need for an investigation by the Special Investigations Division [SID] of an incident involving, or allegedly involving, the inmate."  N.J.A.C. 10A:20-4.42(a)(6).  The version in effect at the time of plaintiff's transfer contained a nonexhaustive, "includ[ing], but . . . not limited to" list which nevertheless authorized plaintiff's transfer.

of the incident, the DOC's obligation to protect plaintiff, and the DOC's need to launch its investigation into the allegations.

Upon her arrival at Edna Mahan, plaintiff was evaluated because she reported experiencing nightmares and expressing thoughts of suicide and self-harm. She was placed on constant observation status for seventy-two hours. See N.J.A.C. 10A:1-2.2, :16-12.1 to -12.8.

On April 22, 2019, plaintiff submitted the first of several administrative inquiries via the DOC's electronic inmate remedy system, asking about the status of her return to Columbus House. In all but one of the DOC's responses, plaintiff was advised she needed to "write to SID" to follow up on the status of its investigation. One of the responses indicated plaintiff needed to "[w]rite RCRP/Community Program." On July 25, 2019, plaintiff was granted parole and released from incarceration. SID concluded its investigation on September 9, 2019.

Shortly thereafter, plaintiff filed a ten-count complaint against the McDonald's franchise and the offending supervisor, the RCRP and employees of Columbus House, and the DOC. Count ten of the complaint alleged the DOC retaliated against defendant in violation of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50. Plaintiff filed an amended complaint

supplementing count ten to indicate the DOC was a place of public accommodation for purposes of the LAD. Plaintiff filed a second amended complaint adding John/Jane Doe defendants in certain counts including count four, which alleged a CRA claim for deprivation of or interference with rights, and count seven, which alleged a CRA claim for retaliation.

Plaintiff then filed a motion for leave to file a third amended complaint, seeking to add claims for deprivation of the doctrine of fairness and rightness (counts eleven through sixteen); deprivation of or interference with compliance with an agency's regulations (counts seventeen through twenty); and declaratory relief deeming the DOC's regulations unconstitutional as applied to plaintiff (count twenty-one). The amendments also sought to name Sessomes as a defendant on counts four, seven, eleven, thirteen, fifteen, seventeen and nineteen; and to name the DOC as a defendant on counts twelve, fourteen, sixteen, eighteen and twenty. On August 4, 2021, the court denied the motion.

To the extent plaintiff sought to challenge a final decision, action or inaction of the DOC and to declare a regulation invalid, the trial court found it did not have jurisdiction over these claims. Citing DeNike v. Bd. of Trs., 62 N.J. Super. 280, 291 (App. Div. 1960), the court determined these challenges must be brought in the Appellate Division. The court further found the

remainder of the amendments would be futile because Sessomes was entitled to qualified immunity.

Although the court denied plaintiff's motion, on consent, she filed a third amended complaint that revised count four to add Sessomes as a defendant and changed the basis for the claim from CRA to 42 U.S.C. § 1983. With that amendment, count four alleged Sessomes violated plaintiff's federal "due process liberty interest" rights by returning her to Edna Mahan without the opportunity for notice and a hearing.

On January 21, 2022, the court granted Sessomes's motion to dismiss the complaint. As explained in the court's oral opinion on the record, "[i]n order to prove a 1983 claim, the plaintiff must allege a violation of a well-established right secured by the Constitution or laws of the United States and also must show that the violation was caused by a person acting under the color of state law." Citing Asquith v. Volunteers of Am., 1 F. Supp. 2d 405, 410-12 (D.N.J. 1998), the court noted inmates "do not have an inherent liberty interest in particular modes, places or features of custody and confinement," and therefore plaintiff was unable to show a "well-established liberty interest in the work release program." Because plaintiff's claim was "not predicated upon a well-established right, liberty interest, property interest or constitutional guarantee, it fail[ed] as

a matter of law." The court further found the DOC's promulgation of regulations creating "procedural structures governing prison practices does not necessarily create a protected liberty interest," and here, the regulations concerning transfer did not require any additional notice or hearing. The court also found plaintiff's motion for reconsideration unavailing.

On November 14, 2022, the court granted the DOC's motion for summary judgment as to count ten, finding

> there [wa]s no genuine dispute that the DOC had legitimate non-retaliatory reasons for administratively returning plaintiff to the correctional facility. And under the burden shifting analysis, the plaintiff cannot establish that the DOC's legitimate non-retaliatory reasons for being administratively returned to the correctional facility are mere pretext retaliation.

Accordingly, the court dismissed plaintiff's complaint with prejudice. Plaintiff appeals, arguing:

POINT I

BECAUSE SESSOMES'[S] ORDER TO RETURN PLAINTIFF TO STATE PRISON WAS NOT A FINAL AGENCY DECISION, THE LAW DIVISION HAD JURISDICTION TO DECIDE PLAINTIFF'S CLAIMS AGAINST DEFENDANTS []DOC AND SESSOMES, AND FOR THE TRIAL JUDGE TO DECIDE OTHERWISE WAS ERROR.

POINT II

BECAUSE THE NEW CLAIMS IN [PLAINTIFF]'S PROPOSED THIRD AMENDED COMPLAINT WERE NOT PREMISED ON THE SAME ARGUMENTS AND ALLEGATIONS THAT WERE PREVIOUSLY ADJUDICATED, DENIAL OF LEAVE TO AMEND BY THE TRIAL JUDGE WAS AN ABUSE OF DISCRETION.

POINT III

[PLAINTIFF] HAD A LIBERTY RIGHT IN CONTINUING AS AN RCRP RECIPIENT AT THE TIME OF HER RETURN TO STATE PRISON, AND FOR THE TRIAL JUDGE TO DECIDE OTHERWISE WAS ERROR.

POINT IV

BECAUSE [PLAINTIFF] HAD A LIBERTY RIGHT IN CONTINUING AS AN RCRP RECIPIENT AT THE TIME OF HER RETURN TO STATE PRISON, MINIMUM PROCEDURAL SAFEGUARDS WERE REQUIRED.

POINT V

BECAUSE [PLAINTIFF]'S LIBERTY RIGHT IN CONTINUING AS AN RCRP RECIPIENT WAS CLEARLY ESTABLISHED AT THE TIME OF HER RETURN TO STATE PRISON, SESSOMES WOULD NOT BE ENTITLED TO QUALIFIED IMMUNITY FOR DEPRIVING HER OF THIS RIGHT, AND FOR THE TRIAL JUDGE TO DECIDE OTHERWISE WAS ERROR.

POINT VI

[PLAINTIFF]'S PROPOSED DEPRIVATION OF FUNDAMENTAL FAIRNESS CLAIMS AGAINST []DOC AND SESSOMES, CONNECTED TO HER RETURN TO STATE PRISON, STATED A CAUSE OF ACTION, AND THEIR DISALLOWANCE WAS AN ABUSE OF DISCRETION.

POINT VII

[PLAINTIFF]'S PROPOSED DEPRIVATION OF OR INTERFERENCE WITH COMPLIANCE WITH AN AGENCY'S OWN REGULATIONS CLAIMS AGAINST []DOC, REGARDING HER RETURN TO STATE PRISON, STATED A CAUSE OF ACTION, AND THEIR DISALLOWANCE WAS AN ABUSE OF DISCRETION.

POINT VIII

[PLAINTIFF] MADE A SUFFICIENT SHOWING OF ADVERSE ACTION BY []DOC TO SATISFY THAT ELEMENT OF A PRIMA FACIE CASE OF RETALIATION, AND FOR THE TRIAL JUDGE TO DECIDE OTHERWISE WAS ERROR.

POINT IX

[PLAINTIFF] MADE A SUFFICIENT SHOWING OF CAUSAL CONNECTION BETWEEN HER PROTECTED ACTIVITY AND HER RETURN TO STATE PRISON TO SATISFY THAT ELEMENT OF A PRIMA FACIE CASE OF RETALIATION.

POINT X

[PLAINTIFF] MADE A SUFFICIENT SHOWING OF PRETEXT TO RAISE A JURY QUESTION UNDER THE MCDONNELL DOUGLAS FRAMEWORK AS

9

A-1259-22

TO WHETHER SESSOMES'[S] PURPORTED LEGITIMATE REASONS FOR RETURNING HER TO STATE PRISON WERE PRETEXT FOR RETALIATION FOR PROTECTED ACTIVITY, AND FOR THE TRIAL JUDGE TO DECIDE OTHERWISE WAS ERROR.

We first address the trial court's order denying plaintiff's motion to file a third amended complaint, which we review for abuse of discretion. Port Liberte II Condo. Ass'n, Inc. v. New Liberty Residential Urb. Renewal Co., 435 N.J. Super. 51, 62 (App. Div. 2014) (citing Kernan v. One Wash. Park Urb. Renewal Assocs., 154 N.J. 437, 457 (1998)). "'Rule 4:9-1 requires that motions for leave to amend be granted liberally' and that 'the granting of a motion to file an amended complaint always rests in the court's sound discretion.'" Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006) (quoting Kernan, 154 N.J. at 456-57). In exercising its discretion, a court must engage in "a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Ibid. The question of futility is "whether the amended claim will nonetheless fail and, hence, allowing the amendment would be a useless endeavor." Ibid.

The trial court denied the motion in part because it found the amendments to the complaint challenged a final administrative decision of a DOC officer, which must be brought in the Appellate Division. Rule 2:2-3(a)(2) establishes

10

a right of appeal to the Appellate Division "to review final decisions or actions of any state administrative agency or officer, and to review the validity of any rule promulgated by such agency or officer . . . except that review pursuant to this subparagraph shall not be maintainable so long as there is available a right of review before any administrative agency or officer, unless the interest of justice requires otherwise."

It is unclear from the record before us whether Sessomes's decision to return plaintiff to Edna Mahan was a final agency decision, or if plaintiff had a right of further review of that decision. The record reflects plaintiff filed administrative inquiries on April 22, 26, 28 and 30, and May 6, 2019, asking about the status of her return to Columbus House. Although she was advised to write to SID, nothing in the record before us indicates plaintiff made any further inquiry into the status of the investigation or her return to Columbus House, or challenged the initial decision to return her to Edna Mahan. If Sessomes's decision was final, the trial court correctly determined any challenge to it must lie by way of appeal pursuant to Rule 2:2-3.

Plaintiff, however, contends Sessomes's decision was not final and therefore the trial court had jurisdiction. This argument fails because it contorts the requirement of the rule. An appeal as of right under Rule 2:2-3 is not

11

"maintainable so long as there is available a right of review before any administrative agency or officer, unless the interest of justice requires otherwise." Pursuant to N.J.A.C. 10A:1-4.4(d), the DOC's inmate remedy system "must be utilized and fully exhausted prior to an inmate filing any legal action regarding information requests, issues, concerns, and/or complaints." If, as plaintiff suggests, Sessomes's decision did not constitute the final agency decision, nothing in the record suggests plaintiff exhausted her administrative remedies under N.J.A.C. 10A:1-4.4. And contrary to plaintiff's contention, her failure to seek further administrative review of Sessomes's decision does not then give rise to jurisdiction in the Law Division. Rather, she must exhaust administrative remedies in order to challenge a final agency decision, unless she is able to demonstrate the interests of justice requires review of an interim decision under <u>Rule</u> 2:2-3. She has not done so here.

The trial court also denied plaintiff's motion to amend based on its determination the amendment would have been futile because it failed to state a claim. Plaintiff focuses on one sentence in the court's decision, which stated "the new claims . . . are premised on the same arguments and allegations previously adjudicated," and argues the court incorrectly decided the motion because none of plaintiff's claims had been adjudicated at that point. We

12

recognize that the trial court may have inaccurately recollected the procedural history of the case; however, the denial of plaintiff's motion is well-supported in the remainder of the court's decision.

The majority of plaintiff's contentions before the trial court and on appeal are grounded in her assertion that she had a liberty interest in remaining at an RCRP. Because the foundation of her argument is wholly unsupported in binding jurisprudence, her claims fail. "We have recognized that 'halfway house placement does not involve a liberty interest giving rise to due process rights.'" Shabazz v. N.J. Dep't of Corrs., 385 N.J. Super. 117, 124 (App. Div. 2006) (citing Trantino v. N.J. State Parole Bd., 296 N.J. Super. 437, 464 (App. Div. 1997)). This is so because "inmates in a halfway house setting remain in institutional confinement. The return of an inmate from a halfway house to a prison therefore does not impose an 'atypical' or 'significant' hardship on the inmate[] . . . when weighed against the 'ordinary incidents of prison life.'" Id. at 125, 127 (citing Sandin v. Conner, 515 U.S. 472, 484 (1995)).

This issue is beyond debate in federal court as well. In Asquith v. Dep't of Corrs., the Third Circuit noted that while inmates assigned to an RCRP have greater liberty in their restriction of movement, the restrictions that remain on an inmate in RCRP placement "amount to institutional confinement" and

13

therefore removal of an inmate does "not trigger the protections of the Due Process Clause." 186 F.3d 407, 411 (3d Cir. 1999).

With this in mind, we turn to the issue of qualified immunity. "The doctrine of qualified immunity operates to shield 'government officials performing discretionary functions generally . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Morillo v. Torres, 222 N.J. 104, 116 (2015) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right[] . . . in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

A court's "first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered." Saucier v. Katz, 533 U.S. 194, 200 (2001). A trial judge and this court "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of

14

the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

We agree with the trial court's determination Sessomes was entitled to qualified immunity for her decision to transfer plaintiff from the RCRP to Edna Mahan because nothing in that decision-making process violated a clearly established right. Because plaintiff's proposed amended complaint failed to state a claim, it would be futile to permit the amendment. We also find no abuse of discretion in the court's denial of plaintiff's motion for reconsideration under Rule 4:49-2. See Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

We next turn to plaintiff's assertions that her placement in an RCRP was akin to parole release and therefore should have been afforded some procedural due process. The Third Circuit rejected this very contention under both federal and state jurisprudence, Asquith v. Dep't of Corrs, 186 F.3d at 411-12, and we agreed with that analysis. Shabazz, 385 N.J. Super. at 127. While plaintiff urges us to extend the due process protections afforded to parole release to her assignment in an RCRP, we decline to do so.

Lastly, we address plaintiff's claim that the DOC retaliated against her for protected conduct, which was dismissed by the trial court. We review a ruling on summary judgment de novo, applying the same legal standard as the trial

15

court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). The court must decide whether "there is [a] genuine issue as to any material fact" when the evidence is "viewed in the light most favorable to the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014) (first quoting Rule 4:46-2(c); and then quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). Rule 4:46-2(c) provides that a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

To establish a prima facie case of retaliation under the LAD, a plaintiff must show that: (1) she was in a protected class; (2) she was engaged in protected activity; (3) thereafter, she was subject to an adverse consequence; and (4) there is a causal connection between the protected activity and the adverse consequence. Victor v. State, 203 N.J. 383, 408-9 (2010).

McDonnell Douglas Corp. v. Green established the burden-shifting framework for retaliation claims under the LAD. 411 U.S. 792, 802 (1973). If a plaintiff establishes a prima facie case for retaliation, the burden then shifts to the defendant to show "nondiscriminatory reasons," ibid. and after doing so, the

burden shifts back to plaintiff to "show . . . defendant's proffered reason is pretextual." K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ., 431 F. Supp. 3d 488, 514 n.14 (D.N.J. 2019).

Here, there is no question plaintiff engaged in a protected activity by reporting her supervisor's criminal conduct and that she was subject to an adverse action by being returned from an RCRP to a correctional facility. Plaintiff also concedes the DOC has met its burden by proffering a legitimate reason for plaintiff's return. The question is whether plaintiff demonstrated the DOC's returning her to a correctional facility was pretextual.

We agree with the trial court's determination the DOC's reasons for administratively returning plaintiff were "consistent with and substantiated by both the documents and testimony produced in the case." Although the administrative code provision directly pertaining to this situation was not yet in existence, it is beyond dispute prison administrators had the discretion to return an inmate from an RCRP. As articulated by Sessomes, the DOC's decision to transfer plaintiff was guided by concerns regarding her safety and mental health, and to commence the DOC's investigation of the allegations. Nothing about those reasons is "weak, implausible, inconsistent, incoherent or contradictory." See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). Because plaintiff did

17

not articulate any facts demonstrating these reasons were pretextual or create any issue of disputed fact requiring a jury's determination, summary judgment was correctly granted to the DOC.

Where plaintiff seeks to raise issues on appeal she did not raise below, we review those contentions under the plain error standard. "Relief under the plain error rule, Rule 2:10-2, at least in civil cases, is discretionary and 'should be sparingly employed.'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)). Although we may consider allegations of error not raised below if it meets the standard in Rule 2:10-2, we "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available." J.K. v. N.J. State Parole Bd., 247 N.J. 120, 138 n.6 (2021) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)). Given this standard, we discern no plain error in the trial court's decisions.

To the extent we have not expressly addressed any issues raised by plaintiff, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1259-22